J-S26023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROSCOE LANDIS | |
| Appellant | No. 1193 MDA 2014 |

Appeal from the Judgment of Sentence of April 1, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No: CP-21-CR-0002712-2013

BEFORE:  OTT, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                         **FILED JULY 29, 2015**

Appellant Roscoe Landis appeals the judgment of sentence imposed following his convictions for simple assault and harassment,[1] arising from a domestic dispute between him and his girlfriend.  We affirm.

> Krista Hamilton, the victim, testified at [Landis'] trial.  She testified that [Landis] was her fiancé and that she has known [Landis] for three and a half years.  On September 18th of 2013, Ms. Hamilton and [Landis] were living together in an apartment in West Fairview, Cumberland County, and had been living together for approximately two and a half years.
>
> Ms. Hamilton testified that on September 18th of 2013, she and [Landis] were home drinking and that they both had drank "quite a bit[."]  Around 1:15 a.m. on the 18th, police were called to Ms. Hamilton and [Landis'] apartment.  She testified that the police had been called because she and [Landis] were arguing and yelling.  When police arrived, she told them she and [Landis] had been arguing and that [Landis] "punched the wall and ripped

---

[1]     **See** 18 Pa.C.S. §§ 2701(a)(1), 2709(a)(1), respectively.

the sink faucet off." She could not remember whether she told Officer Keith Morris, the responding officer from the East Pennsboro Township Police Department, that [Landis] had kicked her but testified that [Landis] had not kicked her. Upon further questioning, Ms. Hamilton conceded that if Officer Morris testified that she told him on the night of the incident that [Landis] kicked her that she would believe him. She also testified that [Landis] dumped a mixed drink on her but could not remember what she told Officer Morris in that regard.

Ms. Hamilton testified that, after the police left, [Landis] was a little upset and yelling but that his anger was not directed toward[] her. The Commonwealth then handed her Commonwealth's Exhibit 3 which she identified as a pan that she and [Landis] kept a cigarette roller in. After she identified the pan, the Commonwealth asked her if [Landis] had used that pan to hit her in the head. She responded that he had not. Rather, she explained, [Landis]

> went to take the pan with the cigarette roller, I grabbed it trying to get it back because I wanted to roll a cigarette. We kind of pulled both ways on the pan, and at one point he let go of the pan saying just have it and it flew back and hit me in the head because I was still holding on it.

Ms. Hamilton testified that after being struck in the head by the pan she became very upset and went to a neighbor's house down the street, falling down the stairs as she left her apartment. She admitted, however, that she did not tell the police that she fell down the stairs. It was approximately 1:30 a.m. when she arrived at her neighbor's and asked them to call the police.

Again, Officer Morris responded to the call. When he arrived, Ms. Hamilton was standing outside her neighbor's house about a block from her own apartment. She testified that she told Officer Morris that [Landis] hit her in the head with the pan. She also testified that she told Officer Morris that [Landis] first looked for a bat to punish her because he believed that she had called the police.

Ms. Hamilton then identified Commonwealth's Exhibit 1 as a statement she dictated to Officer Morris and signed. The statement reads:

> [Landis] came upstairs and said he was getting a baseball bat. [Landis] said he was going to hit her with it because she deserved it for calling the police. [Landis] then grabbed a metal tray and hit her in the head with it. [Landis] then grabbed her by the hair and pulled her down the stairs.

After signing the above statement, Ms. Hamilton stayed outside while [Landis] was arrested. Subsequent to [Landis'] arrest, Ms. Hamilton and Officer Morris went back inside her apartment, and Officer Morris took pictures of her injuries. Ms. Hamilton identified Commonwealth's Exhibit 2 as a picture of her head taken by Officer Morris on the night of the incident.

Officer Morris returned to Ms. Hamilton's apartment on September 20th and took more photographs. Ms. Hamilton identified Commonwealth's Exhibit 4 as a photograph of her leg and Commonwealth's Exhibit 5 as a photograph of her back. She testified that those photographs were taken two or three days after the incident.

On cross-examination, Ms. Hamilton testified that she believed the initial call to the police was made by her neighbor[s] across the street. Regarding the inconsistencies between her testimony and what she told police, Ms. Hamilton stated that at the time of the incident she was "on fentanyl patches prescribed by the doctor. And on top of the alcohol there were times when I would get confused about what was going on and what happened." She further testified that "[a]fter the alcohol wore off the next day, [she] started remembering things here and there and it came back to [her] what really happened and it was not what [she] told the police officers," although she believed it was true at the time. She did not, however, correct the inaccuracies of her statement after "remembering things here and there." She also testified that she did not read through the statement she dictated to Officer Morris in its entirety before signing it. When asked by defense counsel if [Landis] had hit her with a pan or kicked her, she testified that he did not.

On redirect, Ms. Hamilton admitted that at the preliminary hearing in this matter she did not tell Officer Morris that the statement she gave the night of the incident was not true. She also admitted that her testimony at trial was the first time she told anyone that her original statement was not true. Addressing why she did not correct her initial statement at the

time of the preliminary hearing, Ms. Hamilton testified on recross that her father told her that if she did not "go through with the statement" he would not help her and that "he would make sure [she] would never see [her] kids again." And when defense counsel asked her if she felt threatened by the police when she gave her statement, she responded: "In a way. I was told that if I did not show up and testify at the preliminary that my probation officer would be called."

Officer Morris testified that when he arrived at Ms. Hamilton and [Landis'] residence on September 18th at approximately 1:15 a.m.[, Landis] answered the door. According to Officer Morris, [Landis] was "very agitated, upset, intoxicated, very intoxicated." [Landis] told Officer Morris that he and Ms. Hamilton were having an argument. Officer Morris then went upstairs to speak with Ms. Hamilton. He testified that the kitchen/dinette was a "total mess" and that it appeared that "there had been a pretty intense argument, some type of altercation there," specifically noting that a dining room chair had been knocked over and the kitchen faucet ripped from the sink.

Ms. Hamilton, according to Officer Morris, was soaking wet, upset, mad, and intoxicated. She told Officer Morris that she and [Landis] were arguing and that he poured a bottle of SoBe juice over her and kicked her in her legs multiple times. Ms. Hamilton did not want to be taken to a shelter but wanted to stay at her apartment. At about 1:30 a.m., Officer Morris left.

Approximately eighteen minutes later, Officer Morris was dispatched back to Ms. Hamilton and [Landis'] residence. Prior to his arrival back at the residence, Officer Morris was informed that Ms. Hamilton had been hit in the head with a pan. Officer Morris met Ms. Hamilton about a block and a half from her residence. Ms. Hamilton told Officer Morris that after he left earlier that morning [Landis] returned to the apartment extremely agitated, saying that he needed to find his bat and that he wanted to punish Ms. Hamilton. She further explained to Officer Morris that [Landis] was unable to find his bat, picked up a pan instead, and began walking toward[] her. When Ms. Hamilton attempted to run past [Landis], he took the pan in both hands, swung it at her, and struck her on the side of her head. While speaking with Ms. Hamilton at the scene, he observed a small laceration on the right front part of her head. Ms. Hamilton also identified for Officer Morris the pan, which was

found behind the living room couch, [Landis] used to strike her. Officer Morris identified Commonwealth's Exhibit 3 as that same pan. He also identified Commonwealth's Exhibit 2 as a picture he took of the injury to Ms. Hamilton's head.

Officer Morris then asked Ms. Hamilton for a written statement. Because of Ms. Hamilton's insecurity with her own writing and spelling, Officer Morris offered to write the statement for her while she told him what had happened. When she had finished dictating her statement, Officer Morris handed the statement to her and asked her to read it and "if she agreed with what was written on the paper, to sign on the line below acknowledging that was her statement." Officer Morris identified Commonwealth's Exhibit 1 as the statement he had taken from Ms. Hamilton which she signed in his presence.

Officer Morris returned to Ms. Hamilton's residence a few days later to serve her a subpoena for the preliminary hearing and to take additional pictures. He explained to her that he needed to take pictures of any injuries from the incident. According to Officer Morris, he returned to take more photographs because bruising does not always appear immediately on some people. Ms. Hamilton showed him injuries on one of her legs and on her lower back. She told Officer Morris that those injuries were from [Landis] kicking her. Officer Morris also testified that at the time of this visit Ms. Hamilton was sober and happy that he was there and that since September she has never contacted him to change her story.

Trial Court Opinion ("T.C.O."), 9/26/2014, at 2-8 (citations omitted).

Based upon the above-recited facts, a jury convicted Landis of simple assault, a second-degree misdemeanor, and the trial court convicted Landis of harassment, a summary offense. The trial court set forth the post-trial procedural history as follows:

On April 1, 2014, the date set for [Landis] to be sentenced, [Landis] filed an Emergency Motion for Mistrial, which was denied. [Landis] was then sentenced at Count 1 [simple assault] to undergo a period of incarceration in a state correctional institution of not less than one nor more than two years and to

pay the costs of prosecution and a fine of $200.00 and at Count 2 [harassment] to pay the costs of prosecution. On April 10, 2014, [Landis] filed [his] Post-Sentence Motion for Relief requesting that this Court release [Landis] on bail pending appeal, enter a judgment of acquittal at Counts 1 and 2, and order the transcription of the trial. A hearing was held on [Landis'] motion on May 6, 2014. At the conclusion of that hearing, [Landis'] Motion to be Released on Bail Pending Appeal was granted, and [Landis'] bail was set in the amount of $300,000.00. On June 23, 2014, [Landis'] Motion for Judgment of Acquittal for Insufficient Evidence was denied. On July 18, 2014, [Landis] filed a Notice of Appeal.

T.C.O. at 1-2. On July 23, 2014, the trial court entered an order directing Landis to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 11, 2014, Landis timely complied, and on September 26, 2014, the trial court filed the above-excerpted Rule 1925(a) opinion, ripening this case for appeal.

Landis raises the following issues for our review.

I.   Whether sufficient evidence was produced at trial to support a finding of guilt?

II.  Whether the trial court erred in failing to declare a mistrial when the prosecution made prejudicial statements during the Commonwealth's opening statement, which were not cured by the court's jury instructions?

III. Whether the trial court erred in failing to award a new trial when trial counsel had a conflict of interest, rendering her ineffective?

Brief for Landis at 4 (capitalization and punctuation modified).

In reviewing a claim of evidentiary insufficiency, we apply the following standard:

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found every element of the crime charged beyond a reasonable doubt. We may not weigh the evidence and substitute our judgment for the fact-finder.

*Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa. Super. 2008)

Landis contends that the Commonwealth failed to present evidence that he attempted to cause, or intentionally, knowingly or recklessly caused bodily injury to Ms. Hamilton. He asserts that "the Commonwealth did not put forth any evidence that [Landis] attempted or did cause bodily injury to" Ms. Hamilton. Brief for Landis at 9-10. Landis' argument focuses on Ms. Hamilton's on-the-stand recantation. However, in stating that "[t]he Commonwealth's evidence against [Landis] existed [*sic*] solely of a statement given by Ms. Hamilton, which she then recanted," Landis does not acknowledge Officer Morris's testimony regarding Ms. Hamilton's second statement, which corroborated her first statement days after the fact.

Moreover, even without reference to the second statement, the evidence, viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to sustain the verdict. The trial court aptly reasoned as follows:

> [T]he Commonwealth entered into evidence Ms. Hamilton's written statement, . . . which she dictated to Officer Morris and signed. That statement read:
>
>> [Landis] came upstairs and said he was getting a baseball bat. [Landis] said he was going to hit her with it because she deserved it for calling the police. [Landis] then

grabbed a metal tray and hit her in the head with it. [Landis] then grabbed her by the hair and pulled her down the stairs.

The Commonwealth also presented a photograph, . . . taken by Officer Morris, that showed a laceration on Ms. Hamilton's head that was the result of her being struck by [Landis] with the pan. Thus[,] the jury was presented with evidence that established that [Landis] either intentionally caused or attempted to cause Ms. Hamilton bodily injury. . . .

Although during her testimony at trial Ms. Hamilton denied that [Landis] hit her with the pan, the jury was free to disbelieve this testimony and credit her written statement to Officer Morris instead.

T.C.O. at 9-10. The trial court's account of the evidence more than suffices to establish that the evidence was sufficient to sustain Landis' conviction of simple assault. Accordingly, this argument fails.

With respect to harassment, Landis makes no separate argument. He was convicted under 18 Pa.C.S. § 2709(a)(1), which requires that the defendant, "with intent to harass, annoy, or alarm another," "strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." Because Landis fails to differentiate his argument as between the two convictions, we must assume that his argument here rests on the same sufficiency claim he raised against simple assault—*i.e.*, that the evidence failed to establish a basis upon which the fact-finder could conclude beyond a reasonable doubt that Landis struck, kicked, or subjected Ms. Hamilton to physical contact, or threatened to do so. This argument fails for the same reason that it failed with respect to simple assault. Consequently, this sufficiency challenge, too, fails.

Landis' second issue is waived because his argument fails to comply with Pa.R.A.P. 2119, which requires an appellant to provide "such discussion and citation of authorities as [the appellant] deem[s] pertinent." *See Commonwealth v. Eichinger*, 108 A.3d 821, 841 (Pa. 2014) (deeming argument waived for want of adequate discussion and citation of authorities). Landis contends that the prosecution committed prejudicial error in its opening statement, and that the trial court's curative instruction was insufficient to cure the prejudice. *See* Brief for Appellant at 11-12. Landis has provided no citation to any authority but *Commonwealth v. Elliot*, 80 A.3d 415, 443 (Pa. 2013), wherein our Supreme Court explained generally as follows:

> Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial. Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Id.* at 443 (quoting *Commonwealth v. Spotz*, 47 A.3d 63, 97-98 (Pa. 2012)).

Landis, in support of this claim, reproduces the prosecutor's offending statements. He also notes that immediately following the Commonwealth's opening statement his counsel moved for a mistrial. Brief for Landis at 11-12. The trial court heard argument outside the jury's presence and denied the motion for a mistrial. However, upon summoning the jury, the trial court provided a curative instruction.

- 9 -

Landis maintains that the trial court's instruction was insufficient because, in that instruction, the trial court did not expressly connect the court's general admonition that the jury must weigh only the evidence, and that opening and closing statements do not constitute evidence, to the Commonwealth's problematic comments. "It is this failure on behalf of the trial court which created a fixed bias in the minds of the jurors and therefore the trial court committed an abuse of discretion and the conviction should be overturned." Brief for Landis at 12.

Although Landis introduces the ostensibly offending statement by the prosecution, he does not even take the time to direct this Court to which aspects of the highlighted opening comments were contrary to law, nor does he provide case law to support such a claim. He also provides no material legal argument concerning the adequacy of the trial court's instruction to cure any prejudice caused by the Commonwealth's statements.[2] We will not serve as advocate for Landis, or do his legal research for him. Accordingly, this issue, too, is waived. **See Eichinger**, *supra*.

In Landis' third and final issue, he alleges that his counsel had a conflict of interest because counsel had once represented

---

[2] Landis also does not direct us to where in the record he objected to the adequacy of the corrective instruction; if he failed to do so, he would be precluded from contesting its corrective adequacy on appeal. **See Commonwealth v. Moury**, 992 A.2d 162, 178 (Pa. Super. 2010) ("A specific and timely objection must be made to preserve a challenge to a particular jury instruction.").

Ms. Hamilton in an unrelated matter.  Once again, after citing case law for the boilerplate proposition underlying his argument, Landis' actual argument is only a paragraph in length, and lacks citation of any case law that is specifically on point; his argument is utterly conclusory and therefore waived.  Even were it not waived, we would affirm on the sound basis set forth by the trial court:

> "[While it is true that] prejudice is presumed when counsel is burdened by an actual conflict of interest, this is so only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance."  *Commonwealth v. Buehl*, 508 A.2d 1167, 1175 (Pa. 1986).  In *Buehl*, the Court determined that the appellant's "defense was not prejudiced by the fact that, at a prior time, his counsel had represented a Commonwealth witness."  *Id.*
>
> In the present matter, [Landis] filed an Emergency Motion for Mistrial on April 1, 2014.  In that motion, [Landis] sought a new trial, alleging that defense counsel's previous representation of Ms. Hamilton, the victim, was a conflict of interest and deprived [Landis] of a fair trial.  We denied [Landis'] motion.
>
> At a hearing on [Landis'] motion, Timothy Clawges, Esq., Chief Public Defender, testified.  According to Mr. Clawges, his office determined that nothing in its previous representation of Ms. Hamilton would create a conflict with its current representation of [Landis].  While Ms. Cesare, [Landis'] trial counsel in the present matter, did represent Ms. Hamilton in 2012, her representation in 2012 was limited to the preliminary hearing stage and, to Ms. Cesare's recollection, no hearing was held and the charges against Ms. Hamilton were dismissed by the magisterial district judge.  Ms. Cesare also could not recall any specific information regarding her representation of Ms. Hamilton.  In fact, Ms. Cesare was uncertain if she had any conversation with Ms. Hamilton other than acquiring biographical data for her file.  Thus[,] the extent of Ms. Cesare's recollection went no farther than knowledge of the charges against Ms. Hamilton, her name, and little else, none of which was

- 11 -

privileged. As [Landis] failed to present any other evidence, and is relying solely on conjecture, we could not find either that Ms. Cesare actively represented conflicting interests or that an actual conflict of interest adversely affected her performance.

T.C.O. at 13-14 (citations modified; footnotes omitted).

To this apt account of the applicable law and detailed explanation of the trial court's reasoning for denying a mistrial, Landis provides no substantiated rebuttal. Consequently, this issue would fail for want of merit if it were not waived.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2015