J-S17029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYREE TYQUAN MOY | |
| Appellant | No. 1281 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 23, 2018
In the Court of Common Pleas of Lycoming County
Criminal Division at No: CP-41-CR-0002045-2017

BEFORE:  PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 19, 2020**

Appellant, Tyree Tyquan Moy, appeals *nunc pro tunc* from the August 23, 2018 judgment of sentence imposing 4½ to 15 years of incarceration for delivery of a non-controlled substance and criminal use of a communication facility.[1]  We affirm.

The trial court recited the pertinent facts and procedural history in its Pa.R.A.P. 1925(a) opinion:

> By way of background, on August 1, 2017, a confidential informant (CI) contacted [Appellant] to purchase heroin.  Through text messages, [Appellant] and the CI made arrangements for [Appellant] to sell two bundles of heroin to the CI for $160.
>
> The CI, who was wearing a body wire and was accompanied by an undercover Pennsylvania State Police Trooper, Tyler Morse, met [Appellant] to complete the transaction.  [Appellant] handed

---

[1]  35 P.S. § 780-113(a)(35)(ii) and 18 Pa.C.S.A. § 7512.

22 blue wax bags or packets of suspected heroin to the CI in exchange for $160.

The 22 packets of suspected heroin were sent to the Pennsylvania State Police Wyoming Regional Laboratory for testing. Jennifer Libus, a forensic scientist at the Laboratory, tested a composite sample of ten of the packets. No controlled substances were detected.

By information filed on January 4, 2018, the Commonwealth charged [Appellant] with delivery of a non-controlled substance, an ungraded felony, and criminal use of a communication facility, a felony of the third degree.

On June 13, 2018, [Appellant] waived his right to a jury trial and proceeded to a non-jury trial before the court. The court found [Appellant] guilty of both charges.

On August 23, 2018, the court sentenced [Appellant] to an aggregate term of three to ten years' incarceration in a state correctional institution, consisting of consecutive sentences of 18 months to five years on each count.

Trial Court Opinion, 11/18/19, at 1-2 (footnotes omitted).

The trial court denied Appellant's timely post-sentence motion, but no direct appeal followed. On July 9, 2019, the PCRA court entered an order reinstating Appellant's direct appeal rights, and Appellant filed this timely *nunc pro tunc* appeal on August 1, 2019. He presents three questions:

1. Was Appellant denied his 6th Amendment right to confrontation of the confidential informant at trial?

2. Did the Court err in admitting text messages which were not properly authenticated?

3. Was the evidence presented at trial insufficient to establish Appellant's convictions?

Appellant's Brief at 5.[2]

We will consider these arguments in turn. An assertion of a Confrontation Clause[3] argument presents a question of law, for which our scope of review is plenary and our standard of review is *de novo*. ***Commonwealth v. Williams***, 103 A.3d 354 (Pa. Super. 2014), ***appeal denied***, 116 A.3d 605 (Pa. 2015). The Commonwealth provided the CI's identification to Appellant prior to trial, and the Commonwealth intended to call him as a witness. However, the CI disappeared the week of trial and the Commonwealth was unable to locate him. Appellant's Confrontation Clause argument arises from the CI's absence at trial. The argument is multifaceted. Appellant argues (1) that the trial court should not have permitted Trooper Morse to testify to the CI's statements; (2) that the trial court improperly permitted Trooper Morse to give his "interpretation" of some of the CI's statements; (3) that the trial court improperly circumscribed Appellant's cross-examination of Trooper Morse; and (4) that the Commonwealth's failure to procure the CI's testimony at trial entitles him to an adverse inference.

The record reflects that Trooper Morse was in the car with the CI and Appellant during the controlled buy, and he testified as to some of the CI's

---

[2] We note with disapproval that the Commonwealth has not filed a brief.

[3] "In all criminal prosecutions, the accused shall enjoy the right […] to be confronted with the witnesses against him[.]" U.S. Const. amend. VI.

statements.  In particular, Appellant challenges this exchange between the prosecutor and Trooper Morse:

> Q.    When you debriefed [the CI] did you request that he do anything?
>
> A.    When I initially picked him up I had him—well before I picked him up I had him reach out to [Appellant] through text messages to see if [Appellant] would be around, and that I was good to come get him.  [The CI] told me that he would be around, that [Appellant] would be around, and that I was good to come get him….

Appellant's Brief at 15 (quoting N.T. Trial, 6/13/18, at 101) (underscoring added in Appellant's Brief).  Appellant argues that he was unable to confront the CI about "what the CI meant when he said those things to Trooper Morse." Appellant's Brief at 15.

Appellant cites **Crawford v. Washington**, 541 U.S. 36 (2004), in which the Supreme Court held that the Confrontation Clause prohibits the admission of testimonial out-of-court statements unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Appellant's argument, however, is undeveloped.  He does not address the distinction between testimonial and nontestimonial hearsay, nor does he explain whether or why he believes the CI's statements were testimonial.  The Supreme Court left the distinction between testimonial and nontestimonial statements open in **Crawford**, but developed it in **Davis v. Washington**, 547 U.S. 813 (2006), and **Michigan v. Bryant**, 562 U.S. 344 (2011).  Appellant does not address these latter two cases, nor does he cite **Williams** or any

other pertinent Pennsylvania precedent. Furthermore, Appellant did not object to the above-quoted testimony at trial. N.T. Trial, 6/13/18, at 101. These deficiencies result in waiver pursuant to Pennsylvania Rules of Appellate Procedure 302(a),[4] 2119(b), and 126.[5]

Next, Appellant argues that Trooper Morse's "interpretations" of what the CI said violated the Confrontation Clause (Appellant's Brief at 15-16). Appellant provides no record cites for where these interpretations occurred, nor does he develop any legal argument on them. We therefore cannot conduct appellate review.[6] Similarly, we cannot review Appellant's assertion that the trial court improperly circumscribed his cross-examination of Trooper Morse because Appellant fails to direct us to the portions of the record where these alleged errors occurred.

In his final argument arising from the CI's absence at trial, Appellant claims the Commonwealth's failure to produce the CI at trial entitles him to

---

[4] "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

[5] "Citations of authorities in briefs shall be in accordance with Pa.R.A.P. 126 governing citations of authorities." Pa.R.A.P. 2119(b). Rule 126 requires, among other things, that a party "direct the court's attention to the specific part of the authority on which the party relies." Pa.R.A.P. 126. *See Commonwealth v. Mulkin*, 228 A.3d 913, 917 (Pa. Super. 2020) (noting that failure to support an argument with citation to authority results in waiver).

[6] Failure to support an argument with citations to the record results in waiver. *Commonwealth v. Fransen*, 42 A.3d 1100, 1119 (Pa. Super. 2012) (*en banc*) (citing Pa.R.A.P. 2119(c)).

an adverse inference. Appellant cites **Commonwealth v. Manigault**, 462 A.2d 239 (Pa. 1983), in which our Supreme Court wrote:

> [W]hen a potential witness is available to *only one of the parties* to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable.

**Id.** at 241 (italics in original). We have held, however, that an adverse inference is not warranted when there is a satisfactory explanation for the party's failure to call the witness. **Commonwealth v. Evans**, 664 A.2d 570, 574 (Pa. Super. 1995).

Here, there is a satisfactory explanation for the CI's absence at trial. The Commonwealth remained in contact with the CI through the week prior to trial, at which point the CI ceased all communication with the Commonwealth and disappeared. N.T. Trial, 6/13/18, at 101. The Commonwealth obtained a material witness warrant for the CI but was unable to locate him prior to trial. **Id.** at 161-64. Furthermore, the record reflects that Appellant received the CI's identification prior to trial and did not subpoena him. **Id.** at 165. Because the Commonwealth adequately explained its inability to produce the CI, and because the CI had been identified and was available to both parties, we discern no error in the trial court's refusal to grant an adverse inference. Based on all of the foregoing, Appellant has failed to establish that the CI's absence at trial violated Appellant's rights under the Confrontation Clause.

Next, Appellant argues that the trial court erred in admitting into evidence text messages that lacked authentication. Admission of evidence rests within the discretion of the trial court, and we will reverse only where the trial court abuses its discretion. **Commonwealth v. Elliot**, 80 A.3d 415, 446 (Pa. 2013), **cert. denied**, 574 U.S. 828 (2014). To authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901.[7]

Appellant relies on **Commonwealth v. Koch**, 106 A.3d 705 (Pa. 2014) (plurality). In **Koch**, police seized the defendant's phone during their execution of a search warrant at her home, obtained a warrant for it, and then introduced into evidence text messages sent and received from the defendant's cell phone. **Id.** at 706-07. A testifying officer said the messages related to drug transactions, but he admitted on cross-examination that he could not determine whether the defendant, who owned the phone, was one of the correspondents. **Id.** at 708. The defendant was referred to in the third person in one of the message exchanges, and she therefore argued she was not the author of any of the messages. **Id.** at 708. The testifying detective agreed that authorship was unknown, and the messages contained no contextual clues as to authorship, other than the third-person reference to the

---

[7] As of October 1, 2020, an amendment to Rule 901, governing the authentication of digital evidence, will take effect. **See** Pa.R.E. 901(b)(11), adopted May 20, 2020, effective October 1, 2020.

defendant. ***Id.*** at 710. For these reasons, a panel of this Court held that the Commonwealth failed to authenticate the messages. ***Id.*** at 710. This Court also held that the messages were hearsay—i.e. that they were introduced to establish that the defendant conducted drug sales and possessed a controlled substance with the intent to sell it. ***Id.*** While our Supreme Court did not reach a unanimous opinion, the six sitting Justices unanimously agreed that the messages were sufficiently authenticated. The Justices split evenly as to whether the messages were inadmissible hearsay.

Regarding authenticity, Chief Justice Castille, writing in support of affirmance for himself and two other Justices, reasoned as follows:

> The authentication inquiry will, by necessity, be fact-bound and case-by-case, but, like courts in many other states, we believe that authorship is relevant to authentication, particularly in the context of text messages proffered by the government as proof of guilt in a criminal prosecution. This is not an elevated "*prima facie* plus" standard or imposition of an additional requirement. Rather, it is a reasonable contemporary means of satisfying the core requirement of Rule 901 when a text message is the evidence the Commonwealth seeks to admit against a defendant; the Commonwealth must still show that the message is what the Commonwealth claims it to be, and authorship can be a valid (and even crucial) aspect of the determination.

***Id.*** at 714. Despite the absence of evidence of authorship in ***Koch***, Chief Justice Castille would have found sufficient authenticity because "the burden for authentication is not high, and [the defendant] was charged as both an accomplice and a conspirator in a drug trafficking enterprise." ***Id.*** "As such, authorship was not as crucial to authentication as it might be under different facts." ***Id.*** Then-Justice Saylor, writing for himself in support of reversal, also

- 8 -

believed that "authorship is a relevant consideration in most electronic communication authentication matters." *Id.* at 717. Justice Eakin, writing in support of reversal for himself and one other Justice, believed it sufficient that the Commonwealth established authorship of the cell phone and the criminal content of the messages. *Id.* at 721. Evidence of authorship of the messages "bore on the evidentiary weigh to be afforded them." *Id.*

Presently, the evidence of authenticity is more than sufficient to meet any of the tests set forth in the Supreme Court's opinion in *Koch*. Trooper Morse provided an eyewitness account of the CI's sending and receiving text messages:

> Trooper Morse testified that he observed the CI send and receive text messages with a contact listed as 'Tyree.' [Appellant's] first name is Tyree.
>
> In the text messages, the CI asked 'Tyree' how much for a bun. A bun is slang for a bundle of heroin, which typically would be 10 bags. 'Tyree' replied $80. The CI indicated that he would probably take two when he came up. 'Tyree' directed the CI to come to the hospital. Trooper Morse testified that he drove the CI to that area, and the CI pointed out "Tyree" walking on Rural Avenue. Trooper Morse pulled his vehicle over to the curb. [Appellant] walked over and entered the rear passenger seat of Trooper Morse's vehicle. Trooper Morse turned around and looked at [Appellant] and asked him where he wanted to go. [Appellant] told Trooper Morse he didn't need to look at him and [Appellant] asked Trooper Morse several times if he was a 'fed' (federal agent). [Appellant] had also sent the CI a text inquiring whether he was reporting drug dealers.

Trial Court Opinion, 11/18/19, at 9-10 (record citation omitted). In summary, Trooper Morse witnessed both the CI's authorship of messages to "Tyree" and "Tyree's" text responses to the CI. Appellant then appeared in person to

- 9 -

conduct the drug transaction as arranged in the text messages. Trooper Morse's eyewitness account plainly establishes that the messages were what the Commonwealth claimed them to be, in accord with Rule 901. Given the important factual distinctions between this case and **Koch**, we believe the same result would obtain even under the more stringent authenticity test this Court applied in **Koch**. Appellant's argument to the contrary lacks merit.

Finally, Appellant claims the Commonwealth failed to produce sufficient evidence to support his convictions.

> Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence mandates that we assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact finder to have found every element of the crime beyond a reasonable doubt.
>
> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Evans**, 901 A.2d 528, 532–33 (Pa. Super. 2006) (citations omitted), **appeal denied**, 909 A.2d 303 (Pa. 2006).

Here, Appellant claims the Commonwealth produced insufficient evidence to support his conviction for delivery of a non-controlled substance[8] because the police only tested 10 of the 22 bags of suspected contraband they recovered in this case. Appellant's argument is unavailing. Moreover, Appellant criticizes the trial court's reliance on *Commonwealth v. Carpio-Santiago*, 14 A.3d 903, in which this Court vacated a mandatory minimum sentence for possession of **controlled** substances, where the trial court relied on an aggregate weight that included several bags that tested negative for controlled substances. Appellant notes, correctly, that the mandatory minimum sentencing scheme is no longer good law under *Alleyne v. United States*, 570 U.S. 99 (2013). Appellant also notes, correctly, that *Carpio-Santiago* is inapposite here. Appellant concludes his argument by noting that "testing less than one half of the bags presented does not establish that [Appellant ] is guilty of delivering non-controlled substances." Appellant's Brief at 20.

Appellant fails to support this conclusion with any law, and regardless of the trial court's errant reliance on *Carpio-Santiago*, the record confirms that the substances in question met the statutory definition set forth in § 780-113(a)(35)(ii). As noted above, Appellant agreed to sell heroin to the CI;

---

[8] "Except as otherwise provided by law, no person shall knowingly distribute or sell a noncontrolled substance upon the express or implied representation that the substance is a controlled substance." 75 P.S. § 780-113(a)(35)(ii).

appeared at the agreed upon location; and sold the CI 22 blue wax packets consistent in appearance with packaged heroin. Appellant fails to explain why the testing of only 10 bags renders the evidence of his guilt insufficient. Section 780-113(a)(35)(ii) contains no grading provision, nor does it require a minimum amount of non-controlled substance to support a conviction thereunder. Appellant does not develop an argument under this or any other subsection of the Controlled Substance Act. We discern no basis for granting relief on this argument.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2020